## NIEMOLLER v. DUNCOMBE.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. TRIAL—MOTION TO DISMISS—RESERVATION—GENERAL VERDICT—APPEAL—RENDITION OF FINAL JUDGMENT.

Where, in an action on a contract, defendant moved to dismiss, and the court reserved decision, without objection, until after the jury rendered a general verdict, but there was no special verdict or findings, on appeal from a judgment setting aside the verdict and dismissing the complaint the appellate court may direct such judgment as either party may be entitled to under Code Civ. Proc. § 1187, providing that, where such a reservation is made, the general or special verdict becomes part of the record on appeal, and the appellate division may direct such judgment thereon as either party may be entitled to.

2. CONTRACTS—CONSIDERATION—BILL OF PARTICULARS—FAILURE TO PROVE.

Where, in an action on a contract for services, the contract was supplemented by a bill of particulars which asserted other things in addition to those stated in the complaint as the consideration for a promise to pay a sum of money, the fact that plaintiff failed to prove such other things was immaterial, she being entitled to recover on proof that defendant made the promise in consideration of plaintiff's services which were actually rendered.

3. SAME—SERVICES—VALUE—RECOVERY.

Where a person performed services, relying on a promise to be paid a certain amount therefor, she is entitled to recover that amount, though it is greater than the value of the services.

4. SAME—EVIDENCE—SUFFICIENCY.

Plaintiff and defendant were only sisters, and defendant's husband, dying, left her all his property, amounting to about $400,000, the will being contested by defendant's stepdaughter. Plaintiff, who was the only relative who upheld defendant, claimed that defendant promised to give her $7,000 if she would stay with her until after the contest, aid and advise her therein, and look after her household affairs. Plaintiff,

relying on the promise, performed the services for about a year, and after the termination of the contest defendant renewed her promise if defendant would stay, and look after the house while she was away during the summer, which plaintiff did. Plaintiff was corroborated as to the original promises, which defendant denied, offering evidence tending to contradict the performance of household services, but did not deny the promise after the termination of the contest. *Held*, that a verdict for plaintiff was not contrary to the evidence.

Appeal from trial term, Westchester county.

Action by Eunice Niemoller against Naomi Duncombe. From a judgment dismissing the complaint, and from an order setting aside a verdict in favor of plaintiff, she appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

William L. Snyder, for appellant.
Roger M. Sherman, for respondent.

HIRSCHBERG, J. The complaint alleges that the plaintiff and defendant are sisters; that the defendant's husband died on the 3d day of October, 1893, at the city of Mt. Vernon, N. Y., leaving to his widow, the defendant, all his property and estate, amounting to not less than $400,000; that shortly thereafter the defendant requested the plaintiff to continue to live and reside with the defendant pending certain litigation with regard to the alleged will and property and estate of defendant's husband; that defendant promised and agreed to pay plaintiff for remaining with her and superintending her household duties, aiding her in preparing evidence and getting ready for trial of the contest over her husband's will, and counseling and advising her during said period, the sum of $7,000; that the plaintiff duly performed all the provisions of the contract, and then demanded the money, which the defendant refused to pay. The defendant's answer denies the contract, and alleges that the plaintiff did continue to live with her after her husband's death, but only as a guest, and as a favor and convenience to the plaintiff. In support of her side of the issue, the plaintiff testified that shortly after the will was read she had a conversation with the defendant, at which her husband, Mr. Niemoller, was present, as follows:

"I said: 'Naomi, how could you tell me such falsehoods, when you said you had seen and read Mr. Duncombe's will, and in it he had left me $10,-000, and you were going to give me a house, then I would be comfortable in my old days?' And I said: 'I helped you to nurse him, and you left me alone with him and a crazy girl when you went to Texas.' I said: 'You have not paid me for the money I sent you to Texas to buy clothes and bring you back. I have no faith in your promises, and my husband and I are going to the city to take a house, and make a home for ourselves.' Defendant said: 'Well, Eunice, don't leave me. Stay with me until after my suit is settled before the surrogate. Then I will pay you, and I will fulfill my promises to you.' My husband, Mr. Niemoller, said: 'Naomi, you ought to fulfill your promise.' She said: 'I will, as soon as it is settled before the surrogate about this.' She said: 'Eunice, get all of your letters now to give to Judge Mills for the suit of the will; about the will; to use in the case,—in the will case.'"

She further testified that a second conversation was had the next month, in November, 1893. She said:

"My husband and I were in the barn, and I was packing up some things in a trunk. My sister came in, and says: 'Eunice, are you going to leave me?' I says: 'I am going to the city. You have treated me so unkindly. You have not·fulfilled your promise, and not told me what you would give me.' Q. What did she do? A. She got down on her knees, and said: 'Oh, Eunice, I will pay you when my suit is settled before the surrogate.' I said: 'Naomi, you never gave me a definite answer what you would give me for staying with you and for the money you owe me.' She said: 'As soon as it is settled before the surrogate, I will pay you, and fulfill my promise. Then I will give you a house.'"

The plaintiff testified to another conversation as occurring on the afternoon of the same day:

"That was the same day the conversation was in the barn in the afternoon this was. Mrs. Duncombe, my sister, William McClellan, my husband, and myself were in the parlor then. William McClellan is the defendant's son-in-law; married her daughter Eunice. In that conversation in the parlor Mr. McClellan turned to me, and he said: 'Auntie, you and uncle must remain. You must not go away until after—leave Mrs. Duncombe alone in her trouble, and I have to go back to New Mexico,' he says. This was just a few days before Thanksgiving. He wanted to return to New Mexico for Thanksgiving. He says:· 'I have to return.' Then he turned to my sister, and said: 'Will you give your sister $7,000 if she remains with you until after the suit before the surrogate?' She made no reply. He repeated the question: 'Will you give your sister $7,000 if she remains until after your suit is settled before the surrogate?' She turned towards me, and she says: 'I will.' And I says: 'Thank you. I will remain.'"

It was established without contradiction that the defendant's stepdaughter, Adeline, did contest her father's will, and that the plaintiff remained, and aided the defendant upon the trial. She produced a number of letters written to her by the deceased, which were used in the defendant's behalf upon the trial; some of which Judge Mills, counsel for the probate, testified were "specially valuable." She testified that she counseled and advised her sister in relation to the contest, superintended and took charge of the household, attending to everything but the kitchen work, cleaned the lamps, arranged the parlors, put the things in order, collected rents and gave receipts, and generally did everything to make things pleasant. On May 14, 1894, the decision of the surrogate was rendered in defendant's favor, and the will duly admitted to probate. She testified that the defendant showed her the surrogate's decision, and said:

"'How glad I am it is all settled.' I said: 'I am thankful, Naomi, because you can now pay me what you owe me, and what you promised to pay me. Then I can have a little home of my own.' She said, 'Oh, Eunice, my taxes have not been paid, and I have not paid for my flagging; but after my taxes are paid I will pay you what I promised and what I owe.' I told her several times I was going away; I wished to leave; she was unkind to me, and that she had never done just right by me. She said: 'Eunice!' We were going then to the city. It was in 1895. This was after the surrogate's decision. She said she was going to New Mexico. The words she said is this: 'You stay, and take care of the house and all, as I have to go to New Mexico with Pettie to see Eunice. She is sick. And if you take charge of all till I return, I swear I will give you the $7,000 that I promised you, and what I owe you.' I stayed. I said: 'I will remain until you return.' They went that summer, and returned in the fall. I stayed there until December, 1895. Then I left." .

There was documentary and other evidence tending to some extent in corroboration. The plaintiff's husband expressly corroborated

the conversations alleged to have been had in October and November, 1893. The defendant met this evidence by her testimony and the testimony of other witnesses tending to contradict the plaintiff's proof on this question of the household services, and by her own categorical denial of the conversations of October and November, 1893. But she did not deny that she went to New Mexico in 1895, leaving the plaintiff in charge of the house, nor did she deny making the promises which the plaintiff testified to receiving from her after the favorable decision of the surrogate. The case was submitted to the jury in a charge so favorable to the defendant that her counsel withdrew his requests, saying, "I am quite content with your honor's charge." The learned trial justice submitted the question of the promise to the jury upon the evidence only of the relation of the parties to each other, and their transactions subsequently to the testator's death, carefully guarding against the possibility of influence from certain extraneous matters and considerations which might appertain to and flow from other evidence not herein detailed; and the jury rendered a verdict in plaintiff's favor. At the close of plaintiff's case the defendant moved to dismiss the complaint upon the ground that "there is an entire failure to prove the cause of action alleged in the complaint in its entire scope and meaning, and not an immaterial or curable variance," which motion was denied, and an exception taken. At the close of the case this motion was renewed "on the ground that the contract set up in the complaint remains unproved in its entire scope and meaning," whereupon the following colloquy was had:

"The Court: Mr. Snyder, will you consent to the reservation of decision on that motion until after the verdict of the jury, under section 1187? Mr. Snyder: That is hard for me to say. I don't know just what the consequence of that reservation would be. The Court: I will take the verdict of the jury subject to my decision on this motion. I reserve decision. Mr. Sherman: For the purpose of completing the formal record, your honor will also give me leave to move to direct a verdict? The Court: The motion to direct a verdict will be denied. (Defendant excepts.) The Court: The motion to dismiss will hence be reserved. On the denial of that motion the defendant will have an exception. On the granting of that motion, if it should be granted, plaintiff to have an exception."

Neither side objected to the course adopted by the court. Upon the rendition of the verdict the defendant moved to set it aside as against the weight of evidence, as against the evidence, and on the exceptions taken on the trial, which motion the court granted, saying: "The motion to set aside is granted. The motion to dismiss is granted upon the ground that the plaintiff has not made out the cause of action laid in the complaint;" and to this the plaintiff excepted. While there was no special verdict and no special findings, as provided in section 1187 of the Code of Civil Procedure, it is apparent that the parties consented to the reservation of the motion to dismiss the complaint until after the jury should render a general verdict upon the issues, and that the case is, therefore, to be regarded as one in which the appellate division may direct such judgment as either party may be entitled to under section 1187. This also appears to have been the view of both parties in preparing the

case, which contains the exceptions on both sides. The contract set out in the complaint was established by the plaintiff's evidence to the satisfaction of the jury. The defendant claims that it was amplified by a bill of particulars, which asserts other things in addition to those stated in the complaint as the consideration for the promise to pay the $7,000, and that the plaintiff failed to prove these other things. The plaintiff could recover, however, on proof of the allegations contained in the complaint,—that is, upon proof of the promise made as a consideration for services set forth in the complaint, and actually rendered by her,—notwithstanding in her bill of particulars she may have stated that she agreed to render other services, which were not in fact rendered. At most, the bill of particulars would be proof of inconsistency, or possibly as affecting the plaintiff's credibility. But it was not offered in evidence, nor does it appear in the record. It is true, the complaint does not aver an agreement on plaintiff's part to perform the stipulated services, but the promise to pay becomes binding upon the rendition of the services, and that, too, although the amount may be in excess of the value of the services. Miller v. McKenzie, 95 N. Y: 575. If the plaintiff's story is true, the defendant agreed to pay her $7,000 if she would remain with her during the contest of the will, counsel and aid her so far as she could, and do certain household work. While the story may contain elements of improbability, there is nothing incredible in it; and, while it has some support in the evidence of others, it has not been met upon the trial by even a complete denial. That the defendant acquired a considerable fortune from her husband is undisputed. The plaintiff was her only sister. No other relative appears to have stood by her and to have supported her in her trouble; and under the circumstances a promise to pay a comparatively trifling sum from the fortune so acquired does not seem unlikely as a return for active aid in the impending contest, accompanying the countenance of continued companionship, and the comfort and consolation of sisterly sympathy. No question of public policy is involved. It was the proper function of the jury to determine the truth of the plaintiff's story. The plaintiff says that, in reliance upon the promise, she did remain with the defendant for more than the prescribed period, did render the stipulated aid and counsel in the legal proceedings, and did the household work. If the jury believed this, it established the plaintiff's right to recover the amount agreed upon. The rule is stated by Judge Earl in the case cited as follows (page 582):

"That portion of the charge of the judge now under consideration, in order to embody the correct rule, should, therefore, have been that, if this note was given by the intestate for services which the plaintiff had rendered to him, and for services which she should render to him, and which she subsequently did render to him, in reliance upon his promise, then she was entitled to recover the full amount of the note, although that was much greater than the real value of the services; and for such a rule the cases of Worth v. Case, 42 N. Y. 369, and Earl v. Peck, 64 N. Y. 596, are ample authority."

The verdict was not contrary to the evidence, nor against the weight of evidence. Nor is there anything in the defendant's excep-

tions requiring a new trial. If any evidence was admitted which could in any manner tend to prejudice the defendant unduly, it was cured by the remarkably careful charge of the court, in which the deliberations of the jury were solicitously limited to the proof of the contract, its performance on the one side and its breach upon the other, and the evidence legitimately and directly bearing on those questions.

The judgment and order should be reversed, and a judgment directed for the plaintiff upon the verdict of the jury, with costs, and the costs of this appeal. All concur.