HERMAN v. P. H. FITZGIBBONS BOILER CO.

(Supreme Court, Appellate Division, Fourth Department. January 12, 1910.)

1. MASTER AND SERVANT (§ 116*)—INJURY TO SERVANT—PLACE FOR WORK—"STRUCTURE."

A vessel, in attaching iron plates to which workmen are employed, is a "structure," within Labor Law (Consol. Laws, c. 31) § 18, requiring employers to furnish employés, in working thereon, safe scaffolding, etc.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*

For other definitions, see Words and Phrases, vol. 7, pp. 6700–6702; vol. 8, p. 7806.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 116*)—INJURY TO SERVANT—PLACE FOR WORK—
"SCAFFOLD."

A platform, made by planks resting on crosspieces nailed to upright timbers, for workmen to stand on while attaching iron plates to a vessel, is a "scaffold," within Labor Law (Consol. Laws, c. 31) § 18, requiring employers to furnish employés safe scaffolding when working on buildings or other structures.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

3. RELEASE (§ 24*)—CONTESTING VALIDITY—RESTORATION OF CONSIDERATION.

Where the fraud in securing the release of plaintiff's claim was in getting him to execute the same in ignorance of its contents, and not in obtaining his assent to the settlement, he is not required to return the consideration received before contesting its validity.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 45; Dec. Dig. § 24.*]

4. APPEAL AND ERROR (§ 1176*)—DETERMINATION OF CAUSE—DIRECTING JUDGMENT.

On reversal of a judgment of nonsuit after a verdict for plaintiff, judgment on the verdict, rather than a new trial, should be directed, where the verdict is moderate, and does not appear to be contrary to law or the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4593; Dec. Dig. § 1176.*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Oswego County.

Action by Michael Herman against the P. H. Fitzgibbons Boiler Company. From a judgment for defendant, dismissing the complaint, with costs, after a verdict for plaintiff, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

L. W. Baker, for appellant.
Elisha B. Powell, for respondent.

KRUSE, J. The plaintiff, a workman in the defendant's employ, was at work upon a scaffold, engaged with other workmen in attaching iron plates to a vessel. The scaffold gave way, and the plaintiff was precipitated to the ground, a distance of about 10 or 15 feet, and hurt. The action is brought to recover for his personal injuries.

The scaffold was built by placing two rows of upright timbers about four feet apart, with crosspieces nailed at both ends to the uprights. Two planks were laid side by side, with the ends resting upon the crosspieces. There were several sections and other parts, which need not be described. One of the crosspieces, a few inches from where it was nailed to the upright, broke, thus letting down the plank upon which the plaintiff was standing, causing him to fall. Without describing more particularly the vessel and scaffold, or more minutely detailing the surrounding circumstances, it is sufficient to say that we are of the opinion that the vessel was a "structure," and that the platform upon which the plaintiff was at work was a "scaffold," within the meaning of the eighteenth section of the labor law, relating to scaffolding for the use of employés (Consol. Laws, c. 31, § 18), and that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the proof shows that the scaffold was furnished by defendant and the plaintiff directed to perform work thereon, and that the plaintiff was hurt through the fault of the defendant in furnishing an unsafe scaffold.

The difficulty arises over the question of the settlement of the claim. The defendant contends that it paid to the plaintiff the sum of $85, besides his doctors' bills and hospital expenses, in payment and full discharge of all his claims against the defendant, and that the plaintiff accepted and received the same and executed a general release under seal accordingly. The plaintiff admits the payment, but denies that there was any agreement to accept the same in settlement and discharge of his claim.

It appears that five days after his injury, and while he was in the hospital, the defendant's bookkeeper and a lawyer came to see him. The plaintiff testifies that the lawyer said to him that he had come there to pay his hospital bill and doctor bill; that the plaintiff said that he was glad of it; that the lawyer asked the bookkeeper what the plaintiff's wages were a week, and was told $16.50; that the lawyer said that the doctor claimed that the plaintiff would be all right in about five weeks, and that he would pay him five weeks' wages, which would amount to $82.50; that the lawyer did some writing, and asked him to sign his name; that he said he did not write; that he asked the lawyer to put it down for him, and the lawyer said to put a cross to it—that that would answer just as well; that he put a cross to the paper and handed it to the bookkeeper; that then the lawyer said he would pay him five weeks' wages, and the plaintiff said, "All right;" that the lawyer made it $85, a little over, and said to him, "I will make you a present of that," and plaintiff thanked him. The paper to which the plaintiff made his cross was in form a general release. The payment of the $85 seems to have been made by draft, drawn by the lawyer upon some one in Syracuse, payable to the order of the plaintiff, and contained the statement:

"In settlement of claim Herman vs. P. H. Fitzgibbons Boiler Company."

The draft was delivered to the plaintiff, and the defendant paid the doctor's bill and hospital charges.

The plaintiff denies that there was any talk of a settlement. He asserts that he did not know, and was not told, that the paper which he signed was a release. He was hard of hearing, and unable to read and write. The testimony of the bookkeeper and the lawyer is directly to the contrary. While it is not claimed that the release was read to the plaintiff, the lawyer testifies that he stated to the plaintiff that it was a release and in full of his claim; that he could not sue; that it was in settlement. The defendant's president also testified that, in a conversation a few days afterward, plaintiff stated to him that he had settled; that he had been told he acted foolishly; that he inquired as to whether he would get pay for future wages, aside from the $85; and that he, Fitzgibbons, the defendant's president, stated to him that he would not promise that; that if he took the check it must be in settlement; that thereupon he (Fitzgibbons) indorsed the plaintiff's name upon the check, and the money was paid out as the plaintiff di-

rected. Fitzgibbons further testified that afterwards he figured up what the plaintiff's wages would have been, had he remained to finish the job, and sent plaintiff the balance. Plaintiff denies that there was any such talk, and testified that all he received for wages, in addition to the $85, was $11 which he had earned before the accident.

At the close of the evidence a motion for a nonsuit was made. It was held until the coming in of the verdict of the jury. The jury specifically found that the plaintiff did not accept the $85 and payment of the hospital charges and physicians' bills in settlement and satisfaction of his claim, and rendered a general verdict of $300 in favor of the plaintiff. The verdict was not set aside, but the motion for a nonsuit was granted. The trial court held that it was the duty of the plaintiff to return or offer to return the money which had been paid to him upon the alleged settlement.

If the plaintiff's testimony is to be believed, there was no agreement to settle his claim, and the money was not paid upon any such contract. The fraud, if any, was not in getting the plaintiff's assent to a contract, but in procuring him to execute an instrument of the contents of which he was ignorant, which purported to discharge his claim, when in fact he had not made any such agreement. Under such circumstances he was not required to return the money in order to maintain the action. Cleary v. Municipal Electric Light Co., 65 Hun, 621, 19 N. Y. Supp. 951, affirmed 139 N. Y. 643, 35 N. E. 206; Shaw v. Webber, 79 Hun, 307, 29 N. Y. Supp. 437, affirmed 151 N. Y. 655, 46 N. E. 1151; Wilcox v. American Tel. & Tel. Co., 176 N. Y. 115, 118, 68 N. E. 153, 98 Am. St. Rep. 650.

The case of Doyle v. New York, O. & W. Ry. Co., 66 App. Div. 398, 72 N. Y. Supp. 936, is relied upon as an authority to sustain the nonsuit; but in that case it appeared that the cause of action had been settled and that the plaintiff had received from the defendant the sum of $800 upon such settlement, which he had retained and not offered to return to the defendant. The jury was instructed that, if the alleged settlement was procured through fraud, the plaintiff might recover, but that in that case the defendant should be credited with the $800, and that sum should be deducted from the amount of any damages which it might find. The jury found a verdict for the plaintiff, fixing his damages at $1,200, and deducted the $800, leaving $400 as the amount of the verdict. The judgment entered thereon was reversed by this court; but that case is quite unlike this one. Here the jury found that the money was not paid in settlement, and the fraud claimed does not relate to the contract, but merely to the execution of the written instrument.

The distinction between the two kinds of fraud is pointed out in a recent case in the Court of Appeals, involving the execution of a conveyance of real estate. Smith v. Ryan, 191 N. Y. 452, 457, 84 N. E. 402, 403, 19 L. R. A. (N. S.) 461, 123 Am. St. Rep. 609, where Chief Judge Cullen says:

"There are two kinds of fraud, which differ essentially in their character. In the one, the grantor is induced to convey his property by fraudulent representations as to the value, nature, or character of the consideration he receives for the conveyance. This is sometimes called 'fraud in the considera-

tion.' In the other case, the grantor is deceived into the execution of an instrument of the contents of which he is ignorant. This is sometimes called 'fraud in the execution of the deed.' The distinction between the two cases lies just here. It is elementary law that the assent of the parties is necessary to constitute a binding contract. In the first case, the assent of the party, though obtained by fraud, is, nevertheless, obtained not only to the execution of the instrument, but to the contract which it evidences. In the second case, there is procured only the signature to and execution of the written instrument, but not assent to the contract therein stated."

While the trial judge would have been justified in setting aside the verdict, I think the nonsuit should not have been granted.

The only question remaining is whether a new trial should be granted, or judgment directed upon the verdict. Of course, if there are any exceptions which require a new trial, we cannot direct judgment to be entered upon the verdict. Harrison v. N. Y. C. & H. R. R. R. Co., 195 N. Y. 86, 90, 87 N. E. 802. I think there is none. But even then the verdict should not be reinstated, if it is contrary to evidence or contrary to law. I have no doubt of the legal liability of the defendant for the injuries which the plaintiff has sustained, and the verdict is very moderate, although I am free to admit that the finding of the jury upon the question of settlement appears questionable. But the testimony comes to us reduced to narrative form, the jury had the advantage of hearing the questions and answers and seeing the witnesses, and I think under all the circumstances we had better let the verdict stand, and not prolong litigation.

Having reached the conclusion that a new trial should not be granted, judgment should be directed for the plaintiff upon the verdict. Code Civ. Proc. § 1187; Faith v. N. Y. C. & H. R. R. R. Co., 109 App. Div. 222, 95 N. Y. Supp. 774, affirmed 185 N. Y. 556, 77 N. E. 1186.

The judgment entered upon the nonsuit should be reversed, and judgment directed to be entered on the verdict, with costs. All concur, except McLENNAN, P. J., who dissents upon the ground that the plaintiff, having executed a release for damages sustained, should have tendered back the money received or procured a cancellation of the release before bringing action for damages. See Doyle v. N. Y., O. & W. R. R. Co., 66 App. Div. 398, 72 N. Y. Supp. 936; McLaughlin v. Syracuse Rapid Transit Ry. Co., 115 App. Div. 774, 101 N. Y. Supp. 196; Shaw v. D., L. & W. R. R. Co., 126 App. Div. 210, 110 N. Y. Supp. 362.

---

MIEULI v. NEW YORK & Q. C. RY. CO.

(Supreme Court, Appellate Division, Second Department. January 14, 1910.)

1. CARRIERS (§ 318*)—INJURIES TO PASSENGER—EVIDENCE.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes