(150 App. Div. 899.)

WEMETTE v. AMERICAN CARBIDE CO.

(Supreme Court, Appellate Division, Third Department. March 6, 1912.)

1. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—NEGLIGENCE—EVIDENCE—VERDICT.

In an action for injuries to a workman in charge of a drop press by the alleged involuntary dropping of the hammer, evidence *held* insufficient to warrant a finding that defendant was negligent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972, 977; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§§ 288, 289*)—INJURIES TO SERVANT—ASSUMED RISK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to a servant by the alleged involuntary operation of a drop press, evidence *held* to require the submission of the issues of contributory negligence and assumed risk to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1005, 1068–1088, 1089–1132; Dec. Dig. §§ 288, 289.*]

Betts, J., dissenting.

Appeal from Trial Term, Clinton County.

Action by Fred Wemette against the American Carbide Company. From a judgment entered on a decision of the court setting aside the verdict of the jury as to two questions and granting a nonsuit or dismissal of the complaint, plaintiff appeals. Judgment vacated and order modified so as to grant new trial, and, as so modified, affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, and BETTS, JJ.

Weeds, Conway & Cotter, for appellant.
Charles J. Vert, for respondent.

PER CURIAM. Judgment vacated and order modified by striking therefrom the provision dismissing the complaint and inserting in lieu thereof a provision granting a new trial, and, as so modified, affirmed, with costs to plaintiff to abide the event of the action.

[1, 2] This decision is made upon the ground that the finding of the jury that the defendant was guilty of negligence is against the weight of evidence; the court holding that the questions as to the plaintiff's assumption of risk and contributory negligence were proper questions

for the determination of the jury.  All concur, KELLOGG, J., in result, except—

BETTS, J. (dissenting).  On January 17, 1908, the plaintiff, a laborer, commenced work for the defendant at its factory.  He had never worked at the kind of work given him in the factory before that time.  On the 23d of January at about 8 o'clock, he was placed at work at the machine where the accident occurred.  The work was placing sheets of tin under a punch press or die.  The press that dropped weighed about 700 pounds, and would come down upon a sheet of tin with considerable force, dropping from its own weight some 4 or 5 inches.  The machine was operated or set in motion by a treadle, worked by the foot of the man who was operating it.  The plaintiff had been shown how the machine worked by Annis, the foreman, on the morning of the 23d.  Annis had said in substance: "Come here, and I will show you how it works when you get ready to use it."  According to the testimony of the plaintiff, Annis, the foreman, ran five or six heads as they were called off through under the die, and then said to the plaintiff "You see how it is done?" to which the plaintiff answered, "Yes."  Whereupon Annis said, "There it is whenever you get ready to use it," and then Annis went away.  At about half past 8 or a quarter to 9 o'clock the plaintiff commenced working on this machine, and Mr. Decora, another employé of the defendant who had been working for it four days, came to assist Wemette, the plaintiff, for a short time until Decora met with an accident by which his fingers were cut off.  Powers, the superintendent, examined the machine afterwards, and the plaintiff shortly after the injury to Decora continued using and operating the machine alone until noon with the apparent knowledge of Annis, the foreman, and Powers, the superintendent.  Powers testified, in substance, that after the accident to Decora he examined the machine, and that it was all right.  Powers had hired Wemette, the plaintiff, and took him to Annis, the foreman of that room, and told him to put Wemette at work at the canning job.  Plaintiff had done some other work with other machines and this machine, but not with the same kind of die until the 23d.  In the afternoon the plaintiff continued the work of stamping heads as it was called, or as he called it, and he described the operation as:

"I would take the unfinished heads from the right and put them in on the table or die.  I would then put my foot on the treadle, press down once, and take my foot off, and the top die would come down and stamp and trim it.  I would take it out and pile it to the left, and reach for the next and repeat the same operation."

In taking these off the plaintiff had to or did put his hand in the socket or circle in which these stamped heads were sunk, and lift them out with his hand or hands from under this heavy die.  Between 1 and half past 1 o'clock, while the plaintiff was attempting to take out one of these stamped heads after the die had come down and stamped it and had gone back up, the plaintiff reached in to get the finished head out, and the die came down and took four of his fingers

off one hand. He testifies that no one had told him prior to this time that there was any likelihood of the machine catching him in that way, and that he had received no other instructions than he had already stated, and he had never worked on a machine of that character before.

The case was tried through; Wemette and a Mr. Bellmore and Mr. Merchant being sworn for the plaintiff, Bellmore having had charge of this machine for some time prior and up to about twelve days before and for nearly three years after the accident, and Merchant, a master mechanic and foreman at different factories and works, including places where they had Bliss presses, which were the kind used here. The defendants' witnesses were George Powers, the superintendent, and a Mr. Campbell, who testified he was a salesman, demonstrator, and general trouble rectifier for the company which manufactured this Bliss punch press. It is perhaps a fair statement of Campbell's evidence that he was more familiar with the sale of these machines than he was with their actual working.

Decora, who was working on this machine for a while with the plaintiff prior to the accident to himself, died subsequently to the accident and prior to the time of trial. Annis, the foreman who was in the room at different times where the plaintiff worked, and who had worked only a few feet from where plaintiff worked, and had given an exhibition on this Bliss machine to plaintiff, was not sworn by the defendant. At the close of the trial a motion was made by the defendant for a nonsuit. The court retained possession of that motion, and submitted four special questions to the jury, which questions and the answers thereto by the jury are as follows:

"First. Was the defendant negligent because a defect had come to exist in the machine during use which defect caused the plunger to fall unexpectedly, and which defect the defendant ought to have discovered and remedied? Answer: Yes.

"Second. Was the plaintiff guilty of contributory negligence in continuing to work after the Decora accident of the same day? Answer: No.

"Third. Did the plaintiff assume the risk of injury to his hand by reason of an unexpected falling of the plunger? Answer: No.

"Fourth. Assess the damages suffered by the plaintiff because of the injury received? Answer: Three thousand dollars."

The plaintiff made the following requests of the court:

"The plaintiff requests the court to submit to the jury, in addition to the questions suggested by the court, one to the effect that the jury have a right to consider on the question of the defendant's negligence whether or not it should have supplied the plaintiff with a stick or other instrument to remove the finished work for his greater safety and protection."

Which request the court denied, and the plaintiff excepted thereto. After a long and careful charge which was certainly not more favorable to the plaintiff than to the defendant, the jury came into court after deliberating from 3:58 p. m. to 7:25 p. m., answering all four questions in favor of the plaintiff, whereupon the defendant renewed its motion to dismiss the complaint and moved to set aside the findings of the jury each of them separately on the ground that they were contrary to the weight of evidence in the case. The plaintiff

moved for judgment upon the findings returned by the jury to the several questions submitted by the court. The court considered the motions, and later set aside the verdict of the jury as to the second and third questions, that is, where the jury had found that the plaintiff was not guilty of contributory negligence, and that the plaintiff did not assume the risk as unsupported by the evidence, and held that the defendant was entitled to a nonsuit on the ground that the plaintiff was not shown to have been free from contributory negligence, and that he assumed the risks. From the judgment so entered the plaintiff appeals to this court.

Upon an appeal from a judgment of nonsuit or setting aside a verdict in favor of the plaintiff, all the disputed facts are to be treated as established in his favor with the most favorable inference to be deduced from the evidence.

First, then, as to the setting aside of the verdict of the jury that the plaintiff was not guilty of contributory negligence which caused or contributed to the injury which he received. Although this action was brought under both the Employer's Liability Act, now the Labor Law (Consol. Laws 1909, c. 31, §§ 200–204), and common-law counts, still the trial was continued as a common-law action, and the Employer's Liability or Labor Law claim was abandoned. It is always in the first instance where evidence is given from which reasonable men might conclude that the party injured was himself free from negligence which caused or contributed to that injury a question of fact for the jury. Hence, if there be any evidence here from which the jury could reasonably find, fairly find that the plaintiff was injured without any carelessness on his part, the verdict should have been permitted to stand. The principal claim of the defendant in that regard is that the plaintiff having stood by or having been present, and having seen the injury to Decora, it put him upon sufficient inquiry as to what caused it to make it contributory negligence to continue his work at that machine until he had reported it, or until repairs had been made to it, or an examination had of it by some person who was competent to repair and remedy it, or to tell him that it was in good condition for use. The plaintiff had been put to work upon this machine, or had been told that, after he had finished the immediate work that he was doing, he should use this machine. He commenced using it alone, then Decora came there, and they worked together. After Decora was injured, of course, Decora left. Then Powers, the superintendent came, and examined the machine, and testified upon the trial that the machine was all right. He did not testify that he told the plaintiff not to work at it any more. He must have known that the plaintiff was continuing his work at that machine. Certainly, if Powers, the superintendent, could testify that the machine was all right, it could not have been contributory negligence in Wemette, an ordinary workman, who had used it at the most a few hours, to continue using it after the accident to Decora. Again, Annis, the foreman who had told the plaintiff to work upon this machine, and had given to plaintiff whatever explanation or instruction he had as to its use, must have known from the situation there that plaintiff was continuing la-

bor on this machine, and yet he did not stop him nor attempt so to do, nor was he even sworn by the defendant upon the trial. Much difficulty apparently was found by the court, the counsel, and some of the witnesses who were offered as experts in describing this complex machine and the method of its work, even with the aid of a model of a somewhat similar machine brought into court by the defendant.

The defendant insists that the plaintiff started this machine by placing his foot upon the treadle. There is no evidence whatever to sustain that contention. The plaintiff swears that he did not, and Bellmore, whose business it had been and was later on to keep this machine in repair, testified that, after the accident, it was gummed in such a way that parts of the machine could not properly perform the functions they were intended to perform, and that the die could thus fall down backward without the use of the treadle.

Much of the reasoning in favor of the plaintiff's freedom from contributory negligence also applies to his assumption of the risk of injury to his hand by reason of the unexpected falling of the plunger. Powers testified:

"On the day of the accident after Mr. Decora was injured and before Mr. Wemette went on I operated the machine, and it operated properly. There was nothing out of order with it at that time."

Manifestly Powers, the superintendent, did not think there was any risk of injury, or he would have stopped Wemette, so I do not think that the plaintiff assumed the risk of the particular kind of injury that came to him, since Annis and Powers were not disturbed by the accident to Decora, and hence that the verdict of the jury in this regard should not have been set aside. There was evidence in the case from which the jury could have found that this die had before the accident fallen backward a month or so before at least one or more times.

As the case now stands, the jury have found the defendant negligent "because a defect had come to exist in the machine during use, which defect caused the plunger to fall unexpectedly and which defect the defendant ought to have discovered and remedied," and they have assessed the damages to the plaintiff, and I think the verdict ought to be reinstated as it was found by the jury and judgment in favor of the plaintiff entered thereon. Code Civil Procedure, § 1187; Herman v. Fitzgibbons Boiler Co., 136 App. Div. 286, 120 N. Y. Supp. 1074; Faith v. New York Central & H. R. R. R. Co., 109 App. Div. 222, 95 N. Y. Supp. 774, affirmed 185 N. Y. 556, 77 N. E. 1186. I think, also, it was an error for the court not to send the question to the jury as to whether the defendant was not negligent in not supplying the plaintiff with a stick or some similar instrument to remove the finished tin or work for the protection of the plaintiff.

Furnishing the plaintiff with a small stick to remove the completed tin after the die had gone up and instructing the plaintiff in its use would forever remove the danger of an accident of this kind, as it would take away the necessity for the operator to put his hand under the drawhead or die. Of course, this would necessitate slower operation. If the defendant thinks the sacrifice or the imperiling of deft

human fingers for expeditious work is preferable to safe, slower methods, it should not object to paying for the loss of such fingers.

I think that in accordance with section 1187 of the Code of Civil Procedure and cases cited, supra, that the action of the court in setting aside the verdict of the jury as to the two questions should be reversed, the entire verdict reinstated, and the usual judgment awarded to the plaintiff thereon upon the verdict as originally rendered by the jury, with the costs and disbursements of this appeal to the plaintiff.