## SKELLEY v. NEW YORK, N. H. & H. R. CO.

### No. 97.

Circuit Court of Appeals, Second Circuit.
Dec. 13, 1937.

Additional Opinion Feb. 7, 1938.

Peter J. Haberkorn, of New York City (Jacob M. Friedman, of New York City, of counsel), for appellant.

Edward R. Brumley, of New York City (Edmund J. Moore, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

Appellant's intestate was killed by a passenger train while crossing appellee's railroad in a motortruck which he was operating at Lee's Crossing at West Cornwall, Conn. The train was proceeding south at 35 miles per hour over a single track railroad. This crossing was unprotected by gates, bell, or flagman, although there was a warning sign positioned nearby. Deceased proceeded along a dirt road which paralleled the railroad track and turned into an inclined dirt roadway which crossed Lee's Crossing at about 18 feet from the intersection of the dirt road over which he drove. A witness sat at his right in the truck and she was the sole witness to the care exercised by decedent in approaching the track. She testified he was on a constant lookout for trains; that when about 3 feet from the tracks deceased stopped the truck and both the witness and the decedent looked both ways and listened but failed to hear or see the approaching train, and he remarked that there was "no train." He then shifted the gears and proceeded across the track, and was nearly across when the train struck the truck.

It is a single track road, running a winding course around hills, as the exhibits show. The train came from the direc-

tion of Adams' Crossing, which was 1381 feet north of Lee's Crossing. The track curves from view looking to the north. According to appellant's testimony, the view of the track was obstructed by high shrubbery until the truck stopped about 3 feet from the track, and then the view to the north was but 150 feet. Appellee's testimony is to the effect that one could see about 675 feet in that direction from within 10 feet of the track.

Section 3708 of the General Statutes Connecticut 1930 provides that a bell and a suitable steam whistle shall be attached to an engine, accessible to the engineer, and kept in good order; and shall be sounded when the engine is approaching or within 80 rods of the place where the railroad crosses any highway at grade and "shall keep such bell or whistle occasionally sounding until such engine shall have crossed such highway."

The appellant's witness testified not only to the care exercised by the decedent as stated, but that there was no whistle sounded nor bell rung as the train approached this crossing. From her testimony, it is apparent that she was attentive, as was the deceased, for warning signals. Both looked for an approaching train. Such testimony of an attentive witness should not be disregarded or considered as merely negative testimony.

The appellee offered proof tending to show that the bell and whistle were both sounded. The engineer of the locomotive was somewhat uncertain in his testimony. He first testified that he blew just an extra signal whistle for Lee's Crossing. He later stated that as he was going over Adams' Crossing he commenced two long and two short whistle signals for Lee's Crossing. When confronted with his testimony before the coroner, given in July, 1934, shortly after the accident, he said that he blew the whistle coming over Adams' Crossing but did not blow it again between the Adams and Lee Crossings. Another witness testified that he was 1,-000 feet from the crossing talking to friends, waiting to go fishing. He said that he heard "the usual crossing whistle." On cross-examination he admitted that four to five minutes might have passed between the whistle and the collision. Another man, who was also fishing, said he heard one loud whistle about half a minute to a minute before the crash. An employee in the cab with the engineer heard four whistles after Adams' Crossing and another 100 feet north of Lee's Cross-

ing as compared to those testified to by the engineer. A state trooper 1,500 feet distant heard a whistle but knew nothing of the accident at the time of its occurrence. A former employee, riding on a free pass, testified that he did not hear any bell ringing but heard four whistles. Another employee, a passenger on the train, testified that he heard four whistles just before Adams Crossing but did not hear any whistle between the Adams and Lee Crossings. The train conductor heard no bell, but he heard four whistle signals just as the train was passing over Adams Crossing. The flagman on the train heard a whistle when the train was at Adams Crossing. The baggagemaster said that shortly after the train passed Adams Crossing he heard a second set of signals, two long and two short.

All this testimony presented a question of fact for the jury's determination as to whether there was a proper warning given of the approach of the train as required by the statute, and whether or not the deceased was guilty of contributory negligence. The burden of establishing the first was on the appellant and the second on the appellee. Delaware, L. & W. R. Co. v. Rebmann (C.C.A.) 285 F. 317; Lehigh V. R. Co. v. Mangan (C.C.A.) 278 F. 85. Indeed, when the jury returned its verdict and a motion was made under section 549 of the New York Civil Practice Act, the court below stated, on the motion to set aside the verdict, "Motion denied. You may have your exception. It was clearly a jury question I think."

However, the court had reserved decision on a motion for a direction of the verdict, and thereafter he directed a verdict for the appellee dismissing the complaint because, as stated, the deceased was guilty of contributory negligence as a matter of law. In the charge to the jury, the court failed to call their attention to the rule which rests the burden of proof as to contributory negligence upon the appellee, but left it for them to say whether the negligence on the part of the deceased caused or contributed to the accident.

The appellant's witness was in a position to hear, and she testified affirmatively and positively that she did not hear a whistle or bell, and the appellee's testimony as to the blowing of the whistle or the ringing of the bell was in some contradiction as to when and where the signals were given. Under such circumstances, the charge of negligence in failing to give the

usual warning signals when this train approached the crossing was for the jury. Lehigh V. R. Co. v. Mangan, supra. As to the decedent's contributory negligence, the jury might well have found, as they did, that he had exercised the degree of care required of a reasonably prudent man in endeavoring to cross the track. It was a dangerous crossing with a curved track and an obstructed view which required the need of approaching signals. With the burden of proof resting upon the appellee to establish contributory negligence (Pokora v. Wabash R. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049), we think it has failed to do so as a matter of law. Decedent had complied with the rule of care announced in the Pokora Case. Before entering upon the track he stopped his truck and looked both ways. He listened and heard no bell or whistle and his last words were the pronouncement, "no train." He was obliged to give attention to the operation of his motortruck to proceed. He was struck by a train operated at 35 miles an hour which was out of his view when 150 to 200 feet away according to the appellant and less than 700 feet according to the appellee. The train traveled that distance in about 15 seconds. The need of care and requirement of watchful looking and listening depends upon the character of the crossing as well as the view of the approaching train. Under these circumstances, the conduct of the decedent presented a jury question. Pokora v. Wabash R. Co., supra; Kinghorn v. Pennsylvania R. Co. (C.C.A.) 47 F.2d 588; Lehigh V. R. Co. v. Kilmer, 231 F. 628 (C.C.A.2).

Appellant asks to reinstate the verdict. The trial judge after the rendition of the verdict, when appellee moved to set it aside because it was against the law and evidence, denied the motion "because it was clearly a jury question." Our examination of the record reveals no errors in the court's ruling as to the admission or exclusion of evidence. The one exception to the charge of the court is general and addressed to the submission of the issue of negligence and contributory negligence to the jury. The merits of this exception we have just considered. No other argument has been presented by appellee in its brief. Where there are no errors of law prejudicial to appellee, the established practice of reinstating the verdict should be followed. Hoffman v. American Mills Co., 288 F. 768 (C.C.A.2). The New York Practice Act, § 461, provides for the reservation of motions for the direction of a verdict for either party until after the jury's verdict after which the verdict may be set aside and the complaint dismissed. See Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636. The New York practice usually permits, where no prejudicial error is shown, a remanding of the case for reinstatement of the verdict and the entry of judgment thereon. See Niemoller v. Duncombe, 59 App.Div. 614, 69 N.Y.S. 88, affirmed 172 N.Y. 621, 65 N.E. 1120; Herman v. P. H. Fitzgibbons Boiler Co., 136 App.Div. 286, 120 N.Y.S. 1074; Doratio v. Jackson, 174 App.Div. 88, 160 N.Y.S. 266; Gartner v. Goodman, 201 App.Div. 177, 194 N.Y.S. 258; Northeastern Paper Co. v. Concord Paper Co., 214 App.Div. 537, 212 N.Y.S. 318, affirmed 242 N.Y. 562, 152 N.E. 428. The Massachusetts rule of practice is the same. Doonan v. Gravina, 291 Mass. 103, 195 N.E. 895; Kaminski v. Fournier, 235 Mass. 51, 55, 126 N.E. 279; Lincoln v. New York, N. H. & H. R. Co., 291 Mass. 116, 196 N.E. 151. See, also, Shives v. Eno Cotton Mills, 151 N.C. 290, 66 S.E. 141; Szabo v. Feiler, 239 Mich. 380, 214 N.W. 128.

If the appellee is so advised, it will be heard as to any alleged error it considers presented by the record, by filing a brief within ten days from the rendition of this opinion; otherwise the verdict will be reinstated.

Judgment **reversed**.

### Additional Opinion.

PER CURIAM.

After our opinion heretofore rendered, December 13, 1937, we permitted the appellee to submit a memorandum as to alleged reversible errors which would require a new trial on the present record. Thereafter appellant was permitted to answer such memorandum.

We think that a new trial should be granted because of errors in the charge. The court permitted the jury to find negligence with respect to the insufficiency of the signs at the crossing. Appellee requested a charge that the appellee was not negligent in failing to provide additional protection at the crossing, which was declined. This should have been charged. On this record, the only issue of negligence for the jury was whether a whistle was blown or bell rung giving notice of the approach of the train over the crossing. This issue could have been stated in simple phrase to the jury. It was not.

A new trial must be had and the order of reversal will grant a new trial.