BERTHA MOSES, Respondent, *v.* BENJAMIN F. CARVER, Appellant.*

Third Department, June 22, 1938.

* Affg. 164 Misc. 204.

*Keenan, Brink & Harrison* [*Neil G. Harrison* of counsel], for the appellant.

*Lee, Levene, O'Brien & Kramer* [*Nathan Frankel* and *David F. Lee* of counsel], for the respondent.

RHODES, J. The question presented by the appeal involves the validity of a release signed by the plaintiff which, by its terms, for the sum of $200.70, discharges the defendant from all liability to the plaintiff and her husband, Eugene Moses, " resulting or to result from accident on or about June 4, 1936."

In the forenoon of that date plaintiff, with her husband, was riding with their son, Ralph Moses, in a car owned and operated by the son, in the city of Binghamton, N. Y.; a collision occurred with defendant's car in which the Moses car was damaged and plaintiff was thrown against the steering wheel, as a result of which she sustained bruises and suffered a reactivation of a dormant tubercular condition. She was immediately taken in an ambulance to the Binghamton City Hospital, arriving there about ten-thirty A. M., and was there put to bed. She says that she was shocked and full of pain and that while in the hospital she was in a dull and stuporous condition, although she does not claim that she was in this condition " every minute." She left the hospital in an ambulance the afternoon of June sixth and traveled by train from Binghamton to her home in New York city.

The same day of the accident Ralph and Eugene Moses, having been informed by the defendant that he was insured, went to the office of defendant's attorneys herein, who were also the local attorneys for the insurance company, with limited powers to adjust claims. Messrs. Moses were anxious to reach an adjustment without delay, Ralph being in a hurry to leave for their home in New York. The discussion of the items of damage principally concerned out of pocket losses and expenses. They were advised by the attorney for the insurer that settlement could not be arranged unless all the claims were adjusted at the same time, and that before such settlement could be arrived at a physical examination and X-rays of plaintiff would be required.

Such an examination was had by a physician representing the insurer with the acquiescence and in the presence of plaintiff's attending physician, but plaintiff says she did not know that the

examination made had anything to do with a proposed settlement. The next day and after the physical examination the Messrs. Moses again went to the office of the insurer's attorneys, and the damages to the car were agreed upon. Eugene, the husband, also agreed upon a settlement of his claim and the claim of plaintiff for the sum of $200.70. The attorney prepared duplicate copies of a proposed release and gave instructions as to their execution. After lunch Eugene and Ralph went to the hospital where plaintiff was asleep. When she was awakened the husband testified that he said to her: "Here are two papers that you will have to sign so we can get money to pay the hospital bills and all other expenses that we have incurred up here." Plaintiff testified that her husband "came in and said they wanted to pay the hospital bill and pay for the car, and said I would have to sign this paper." The foregoing is all that the record discloses was said in plaintiff's presence at the time the papers were signed. A young lady employed in the hospital office, at the request of the son, went to plaintiff's room and signed her name as a witness to plaintiff's signature. The paper was then taken to the hospital office and another young lady signed her name as a witness, but not in the presence of plaintiff. Plaintiff says she did not read the papers and that she went to sleep immediately after signing them.

Messrs. Moses then returned to the office of the attorney and Ralph, having executed his release, received a check which was cashed and he left at two o'clock on a train for New York. The check for $200.70, the amount specified in the release to be paid for the claims of plaintiff and her husband, was delivered to the husband, and after supper on the evening of June fifth he took the check to plaintiff. The testimony is in effect that he said he wanted to pay the hospital bill, their train fare and the doctor and several items like that, and he may have told her the check was from the insurance company. He asked her to sign the check, which she did wholly without reading, and he put it in his pocket and took it with him.

The record reveals no other information which she had relative to the release up to that time. Toward morning her mind was clearer and she began to think about the transaction, wondered "what it was all about," and at her request the nurse telephoned her husband that plaintiff wanted to see him, and not to cash the check. That morning he called at the hospital and plaintiff asked him what the papers and the check were about and when he informed her that the transaction was in settlement of his and her claim, she repudiated the settlement, drew a line through her signature on the check and later it was tendered to the defendants, which

tender was refused, whereupon the plaintiff brought this action to recover damages for her injuries, and has recovered a verdict of $3,000.

The defendant interposed as a defense the release in question and in her reply thereto plaintiff sets forth, *first*, that she signed the paper because it was represented to her that her signature was necessary " so that her son, Ralph Moses, could obtain money from the defendant's representatives to pay for the damage to his car and other incurred expenses," and that she was induced to sign the same by reason of such representations; *second*, that the alleged release was obtained in violation of the provisions of section 270, subdivision B (§ 270-b), of the Penal Law which, in substance, declares it to be unlawful for any person to obtain a release from a patient in a hospital within fifteen days after injuries sustained; *third*, that the alleged release was given under the mutual belief of plaintiff and defendant that her injuries were slight, and that she would speedily recover therefrom; that in truth, conditions existed as to her lungs which had been caused by the accident, which resulted in bringing on active tuberculosis, and that the alleged release was made under mutual mistake of fact.

It is unnecessary to discuss the proposition as to whether the release was void by reason of a mutual mistake of fact or by reason of the provisions of section 270-b of the Penal Law, because the proof under the allegation of the reply to the effect that her signature was the result of mistake, misunderstanding and misstatements is determinative, even though the misleading representations were innocently made by the husband. (*Leary* v. *Geller*, 224 N. Y. 56, and cases cited therein.) A contract may be rescinded on the ground of a unilateral mistake. (*Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411, 417.)

It should be emphasized as it was emphasized by the court below, that no act or conduct on the part of the attorney who represented the defendant and his insurer in the negotiations is subject to criticism or question in any form. No fraud, misrepresentation or deceit was practiced by the attorneys for the defendant and his insurer. The cause of plaintiff's mistake and inducement lies elsewhere.

The evidence establishes that in justifiable reliance upon an apparent state of facts which were actually untrue, plaintiff signed a document, the release in question, without intending to make or sign any release or contract whatever with reference to her claim for personal injuries. The writing does not express the agreement of the parties, because the plaintiff had made no agreement whatsoever as to the subject-matter here involved. She had no inten-

tion of signing and did not know she was signing a release of her claim, although she knew she was signing a paper, but thought it to be something of an entirely different character. The alleged release was, therefore, void. (See *Whipple* v. *Brown Brothers Co.,* 225 N. Y. 237; *Pimpinello* v. *Swift & Co.,* 253 id. 159; *Seneca Wire & Mfg. Co.* v. *Leach & Co.,* 247 id. 1; *Page* v. *Krekey,* 137 id. 307; *Smith* v. *Ryan,* 191 id. 452; *Boxberger* v. *N. Y., N. H. & H. R. R. Co.,* 237 id. 75; *Bloomquist* v. *Farson,* 222 id. 375; *Herman* v. *Fitzgibbons Boiler Co.,* 136 App. Div. 286.)

The judgment should be affirmed, with costs.

HILL, P. J., CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Judgment affirmed, with costs.